222 So.2d 384 (1969)
LUMBERTON STATE BANK
v.
Hershel FORTENBERRY.
No. 45337.
Supreme Court of Mississippi.
May 5, 1969.
*385 B.J. Garraway, Lumberton, Simrall, Aultman & Pope, Hattiesburg, for appellant.
Scales & Scales, Fred T. Rucker, Jackson, for appellee.
Elizabeth Hulen, Watkins & Eager, Jackson, amicus curiae brief for Continental Ins. Co.
INZER, Justice:
This is an appeal by Lumberton State Bank from a decree of the Chancery Court of Jefferson Davis County requiring appellant to restore the sum of $19,097.30 to a bank account maintained by appellee, Hershel Fortenberry, designated as Prentiss Stockyards, Custodial Account, and to pay the funds to the payees of checks drawn on the account. We affirm.
The bill of complaint in this case alleges that the complainant, Hershel Fortenberry, owned and operated a business under the name of Prentiss Stockyards located at Prentiss, Mississippi, where he operated a public auction sale for livestock and that the business was qualified and operated under the provisions of the Packers and Stockyards Act of 1921. It was also alleged that since the complainant began business he had maintained an account in the Bassfield branch of the Lumberton State Bank in which the proceeds for the sale of livestock were deposited. That a sale was had each week and the proceeds were deposited in this account. That the account was designated as Prentiss-Stockyards Custodial Account for Shippers Proceeds. It was also alleged that the bank knew and had been advised by the Department of Agriculture by letter that the funds deposited in this account were trust funds belonging to shippers of livestock sold at the public auction. The bill further charged that on June 21, 1967, a sale was had and the proceeds of this sale were deposited in this account and checks drawn on this account were issued to shippers whose cattle had been sold at the sale. On June 26, 1967, the bank without notice to, or consent of, complainant withdrew the funds from the account and applied the proceeds thereof to an overdraft of the complainant in a personal account. Complainant alleged that the funds withdrawn did not belong to him but were the property of the shippers whose cattle had been sold. A detailed list of the shippers and the amount of the check issued each was set out in the bill. It was further charged that when these checks were presented to the bank for payment the bank refused to pay them and marked thereon "Account Closed." The bill prayed that the bank be required to redeposit the funds in said account and to pay the checks which had been issued to the farmers for their cattle sold at the sale.
The bank answered and admitted that the complainant operated the Prentiss Stockyard but denied that it was operated as required by the Packers and Stockyards Act. It also denied that appellant opened an account designated "Prentiss Stockyards Custodial Account" for shippers proceeds but admitted that complainant maintained a number of accounts in the bank. Appellant denied that any of the accounts were maintained as a trust account. It charged *386 that complainant used all of these accounts and accounts in other banks for his personal use in such a manner that he created overdrafts and that these manipulations had resulted in a large overdraft at the time the account in question was closed. It denied that complainant was entitled to any relief and charged that due to the manipulations of the accounts on the part of the complainant resulting in overdrafts, he had defrauded the bank and the holders of the checks and therefore did not come into court with clean hands.
Three of the holders of the checks filed petitions to intervene in the cause and asked that they be aligned with the complainant. These petitions charged that they had carried cattle to the Prentiss Stockyards which had been sold at auction and had been issued checks drawn on the defendant bank, Bassfield branch, in payment therefor. That when the checks were presented to the bank they were refused payment. These petitions also charged that the funds deposited in the account upon which the checks were drawn were trust funds and they were the owners of such funds to the extent of amount of their checks and that they were entitled to be parties to the litigation.
After a lengthy trial the chancellor rendered an opinion wherein he stated in part as follows:
The Court is further of the opinion that from the inception of the bank account in the Lumberton State Bank, being the so-called Custodial Account, it was carried under various names and styles, varying from "Prentiss Auction Sales-Custodial" to "Prentiss Stockyards-Custodial Account." That throughout the period of time the checks used and drawn on this account reflected "Custodial Account" and also the words "Shipper's Proceeds." That during the month of May 1967 to the date the account was seized by the Defendant, the account was styled "Prentiss Stockyards-Custodial Account"; that on the 13th day of June 1967 the said Defendant was holding certain overdraft checks in a substantial amount drawn by the said Complainant, Hershel Fortenberry, and that on said date the said Defendant Bank through its agents, servants and employees was fully aware and had full knowledge of the type of business that the said complainant was engaged in and that one of the employees of the said Bank had performed certain work on the books and records of the Complainant; that the said Defendant Bank from June 13, 1967, to the date the Defendant Bank seized the funds in the so-called Custodial Account allowed the said Account to increase and deposits to be made with the full knowledge that these checks and deposits were the proceeds of cattle sold by the Complainant for individual shippers; that, therefore, the Defendant Bank should be estopped from seizing said funds.
The Court is of the opinion that the said Defendant did not have the legal right to seize these funds on June 26, 1967, and apply these funds to overdraft checks which said Bank had been holding since June 13, 1967.
The chancellor also held that the doctrine of clean hands did not apply for the reason that the beneficiaries of the trust funds were the holders of the checks set out in the bill of complaint and that the suit was really for their benefit and any wrongful acts on the part of Fortenberry could not affect their rights. However, the chancellor was of the opinion that the proof showed that both complainant and the bank did not come into court with clean hands.
As a result of the chancellor's opinion a decree was entered requiring the bank to deposit $19,097.30 to the account of Prentiss Stockyards-Custodial Account in the Bassfield branch and to pay the named holders of the checks when the checks *387 were presented. The bank was enjoined from withdrawing these funds for any other purpose than the paying of the checks in the amount specified in the decree.
The principal question presented by appellant was whether appellee was a proper party to bring this action. We are of the opinion that the chancellor was correct in holding that appellee could maintain this suit. Appellee brought the suit as trustee for the purpose of establishing that the funds seized were trust funds and to require the bank to restore these funds to the trust account in order that the sellers of the livestock could receive payment for their cattle. In other words, he was seeking to regain possession of the trust funds in his capacity as trustee. Appellant complains that appellee did not actually refer to himself as trustee in his bill of complaint, but it is clear that he did refer several times to the deposit as being a trust account and the funds therein as trust funds, and stated such facts to make it clear that he was bringing the suit as trustee. Appellee did not maintain that he had any right to the ownership of such funds but maintained that the funds were the property of the shippers of the livestock sold at the sale. This Court held as early as 1848 in Ferguson v. Applenhite, 18 Miss. 301, 304 (10 Smedes & M. 301, 304) (1848) that a trustee was the proper person to bring a replevin action to recover possession of trust property and that it was not necessary to bring before the Court the cestui. It is apparent that what appellee was doing in this case was seeking to recover possession of trust funds so that the owners could obtain the funds that belonged to them. There is no doubt that the shippers who had been issued checks for their cattle drawn on this account could have brought an action and recovered against the bank. The same result has been reached by the decree of the court entered because it specifically provides that the money can only be paid out to the holders of the checks which the proof showed had sold their cattle and from which sale the proceeds deposited in the account were derived. We think that the trial court in its discretion could proceed without the necessity of bringing in the large number of shippers who had sold cattle at the sale. The chancellor had the power at any time during the progress of the trial to halt the proceedings and require that the holders of the checks be made parties, if such was necessary in order for a proper decree to be rendered. We are unable to see how the bank was prejudiced in any way by the action of the court in allowing the appellee as trustee to maintain this action.
Appellant also urges that appellee neither asserted or proved any basis for equitable relief and that the relief prayed for should have been denied. We cannot agree with this contention. As we understand the argument of appellant it is its contention that because appellee admitted his personal checks could not have been paid without the transfer of these funds from the Custodial Account and that he had previously commingled funds from this account to pay personal checks. He is estopped from bringing this suit. Apparently this argument is directed at the finding of the chancellor that the doctrine of clean hands did not apply under the facts and circumstances of this case. Appellant overlooks the fact that the misconduct complained of is not directly related to the transaction concerning which the suit was brought. The fact that appellee had allowed the bank to debit the trust fund account on other occasions to cover checks drawn on a personal account and then replace these funds by then depositing money in the trust account derived from other sources other than the sale of livestock did not affect the funds which were deposited in the account just prior to the time the bank seized the trust fund. The bank was well aware that these funds were proceeds from the sale of livestock. In fact, the testimony shows that the president of the bank agreed that appellee should conduct the sale on June 21. The bank was well aware of the manipulations of Fortenberry *388 and in fact, it appears that it assisted him in such manipulations by holding checks and debiting other accounts in order that the checks could be covered. The bank knew that the particular funds seized on June 26 did not belong to Fortenberry and that is controlling. The chancellor was correct in holding both the bank and Fortenberry did not come into court with clean hands, but this is not a suit by Fortenberry seeking to recover possession of the funds for his own benefit.
Finally, appellant contends that the shippers should not be allowed to recover in this case because they had filed affidavits of claims with the trustee named in the bond posted by appellee in accordance with the provisions of the Packers and Stockyards Act. It is contended by doing so that they elected another remedy to recover for their cattle. In other words, it is appellant's contention that they are estopped by election of remedies. There is nothing in the pleadings filed by the appellant to raise this affirmative defense of estoppel. Furthermore, had such issue been raised there is no proof to substantiate an estoppel by election of remedies in this case. Actually so far as the proof shows the shippers have not elected any of the remedies available to them in this case, but if they had elected a remedy by putting the bond in suit, such a remedy would not be inconsistent with their rights to recover against the bank. There can be no estoppel by an election of remedies unless the remedies asserted are inconsistent. Rea v. O'Bannon, 171 Miss. 824, 158 So. 916 (1935).
We hold that the evidence supports the chancellor's finding of fact and that he correctly applied the law governing the issues involved in this case. For this reason the decree of the trial court should be and is affirmed.
Affirmed.
GILLESPIE, P.J., and JONES, BRADY and ROBERTSON, JJ., concur.