386 So.2d 670 (1980)
GUARANTY SAVINGS ASSURANCE COMPANY
v.
Peter A. UDDO.
No. 13051.
Court of Appeal of Louisiana, First Circuit.
March 6, 1980.
Rehearing Denied May 5, 1980.
*671 Floyd A. Falcon, Jr., Baton Rouge, for plaintiff-appellant Guaranty Sav. Assur. Co.
Nick F. Noriea, Jr., New Orleans, for defendant-appellant Peter A. Uddo.
Before EDWARDS, LEAR and GREENE, JJ.
LEAR, Judge.
Guaranty Savings Assurance Company (GSA) and Peter A. Uddo (Uddo) are both aggrieved by the decision of the lower court dismissing their respective demands and, therefore, have prosecuted these appeals. GSA appeals from the dismissal of its principal demand wherein Uddo is the named defendant. Uddo appeals from the dismissal of his reconventional demand filed against GSA and two of its officers and agents, F. D. V. De La Barre (De La Barre) and Pierre D. Kirk (Kirk).
The pertinent facts are these: GSA is a domestic corporation authorized to do and doing business in Louisiana. In the instant cause, GSA was approached by Uddo, a New Orleans restaurant owner, who desired to lease certain property owned by GSA in Baton Rouge, Louisiana. The property in question is located on Stanford Avenue near the Baton Rouge campus of Louisiana State University. Uddo was particularly impressed with the location of the property, because it fronted a body of water known as University Lake and because this was consistent with the name and scheme of his New Orleans operation, Riverbend Restaurant.
In January of 1977, Uddo had several meetings with GSA's officers-agents, De La Barre and Kirk. De La Barre is the secretary-treasurer and a director of GSA, and Kirk is its president. Uddo is a member of a New Orleans family prominent in the restaurant business. He actively managed the restaurant himself. De La Barre, though an officer of GSA, was also a practicing attorney for some twenty-six years and, also, represented GSA in that capacity.
Testimony at the trial established that Uddo desired to lease the lakeside property for the purpose of establishing a restaurant and lounge. He was informed by De La Barre that the property had only recently (December 31, 1976) been leased to the San Francisco Bay Company (San Francisco). Therefore, he was advised by GSA to contact *672 San Francisco. The San Francisco lease, however, was only for five years, while Uddo desired one for at least nine years, coupled with an option. Uddo, with GSA's approval and assistance, negotiated a cancellation of the San Francisco lease for a consideration of Fifteen Thousand Five Hundred and No/100 ($15,500.00) Dollars.
Throughout the discussions and negotiations involving Uddo and De La Barreone session lasting more than seven hours Uddo continued to emphasize that he intended to distinguish the construction and operations of the Baton Rouge and New Orleans restaurants in one critical particular: the Baton Rouge operation would be highlighted by a lounge as "... part of and separate from the restaurant".
However, unknown to Uddo was the prior history of the Stanford Avenue property. GSA's ownership and use of the subject property was permeated with protracted neighborhood opposition to any use which would permit the serving of alcoholic beverages on the premises. In fact, as established in the record, GSA had cancelled a prior lease with one Tortorich who had applied for a liquor permit to operate an "amusement center and lounge and retail outlet". The lease was cancelled and a refund made by GSA because the licensing authorities had denied the same and were upheld by the City-Parish Council.
After the Tortorich incident, GSA officials met with certain of the neighborhood leaders, including Mrs. Ann Hise, whose opposition to lounges in the affected area was well known. These officials of GSA, including De La Barre, assured the opposition that GSA would not act contrary to the sentiments expressed.
Subsequent to 1974, Southside Civic Association, Incorporated (Southside) instituted a suit in the Nineteenth Judicial District Court against GSA and certain of its officials and against certain city officials. Southside sought a declaratory judgment as to the status of the Stanford Avenue property. The matter was ultimately adjudicated by the Louisiana Supreme Court at 339 So.2d 323 (1976). On remand, a consent judgment was entered which held in part, "... that there was an existing non-conforming commercial use of the building at 922 Stanford Avenue but this non-conforming C-1 use was discontinued on August 31, 1976 and if such non-conforming C-1 use is not reestablished on or before August 31, 1977 the building use must conform with A-4 zoning". (Plaintiff Exhibit 9) This judgment was signed and filed on December 28, 1978, less than three (3) weeks prior to the Uddo-De La Barre negotiations.
In the face of these facts, GSA admits that at no time did it disclose to Uddo the substantial opposition that he would likely indeed, certainlyincur in attempting to obtain a liquor permit for a "restaurant and lounge" at the Stanford Avenue property. Nor did GSA's agents, De La Barre and Kirk, disclose to Uddo that the said property was not zoned for a lounge which required a C-2 classification. Uddo, therefore, proceeded to enter into the contract of lease and to expend in excess of Thirty-five Thousand and No/100 ($35,000.00) Dollars in preparation for and in anticipation of a productive business.
Finally, when Uddo applied for the liquor permit, he was confronted with solid opposition from city and civic officials, including Councilman Carl Crane and Mrs. Hise. It was also at that time that he was informed that under no set of circumstances would he likely obtain a rezoning of the property to C-2.
After several unsuccessful attempts to secure the cooperation of Mrs. Hise, the Southside Civic Association, Councilman Crane and other city officials in his efforts to obtain a liquor permit, Uddo concluded that the obstacles were insurmountable. He then notified GSA that he could not complete the venture and that the lease was void because of his inability to obtain a permit. GSA disagreed and, subsequently, sued for breach of contract and payment of the rent. Uddo reconvened alleging that the contract was void from its inception because of error occasioned by the failure of GSA and its agents to disclose the true *673 status of the property and because of Uddo's mistaken belief that he could obtain a permit to operate a lounge in an area zoned C-1 non-conforming.
The trial court held that GSA had properly disclosed the true status of the property and that the contract of lease was valid. However, the court further held that the contract contained a resolutory condition which was triggered and which permitted Uddo to rescind from the contract. The court concluded that the legal obstacle which made it impossible to obtain a permit was such a resolutory condition contained in the contract.[1]
The controversy hinges, therefore, on whether the contract of lease should be rescinded because of error.
We do believe that the evidence is substantial that the principal cause or motive for contracting was to establish a lounge as a part of and separate from the restaurant.
The record reflects that the Baton Rouge Riverbend was to be distinguished from the New Orleans structure in one critical particular: it was to combine a restaurant and lounge. The New Orleans establishment had no more than six thousand (6,000) square feet, of which three thousand five hundred (3,500) square feet were used for the restaurant and the remaining space for kitchen, storage and administrative office space. On the contrary, the Baton Rouge establishment had more than eight thousand five hundred (8,500) square feet, three thousand five hundred (3,500) being allocated for restaurant and three thousand five hundred (3, 500) being allocated for a lounge. The record is replete with evidence to support Uddo's contention that the construction of a lounge was a principal cause for the contract. GSA was well aware of Uddo's intention and that the zoning was inconsistent with Uddo's plan.
Articles 1820 et seq., of the Civil Code provide:
"1820. Error, as applied to contracts is of two kinds: 1. Error of fact, 2. Error of law; [.]
"1821. That is called error of fact, which proceeds from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.
"1825. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several, this principal cause is called motive, and means that consideration without which the contract would not have been made.
"1826. No error in motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement or unless from the nature of the transaction it must be presumed that he knew it.
"1846. Error in law, as well as error in fact, invalidates a contract, where such error is its only or principal cause ..."
Boehmer Sales Agency v. Russo, 99 So.2d 475 (La.App.1958) and Marcello v. Bussiere, 284 So.2d 892 (La.1973) are fully dispositive of this case.
In Boehmer, the plaintiffs alleged that when they entered into an option agreement they labored under an error of fact concerning the principal cause of the contract believing that the zoning status of the property was such that it could be used for the purpose for which they desired it. Further, they alleged that defendant was aware of the true fact but failed to disclose the same. The court held that the vendor (lessor) must disclose the exact status of the *674 property; that the vendee (lessee) need only prove that he labored under an error of fact concerning the principal cause for the making of the contract when it was evident that he (lessee) would not have been interested at all had he known that the property could not be used for the purpose intended.
In Marcello v. Bussiere, another cause factually on point, the buyer-sublessee, Bussiere, filed a reconventional demand for return of the purchase price, rescission of contracts, and money spent in renovation. Bussiere and his wife desired to open a business in Louisiana. They were advised of the availability of certain property which housed a lounge. The Bussieres were acting under the belief that the lounge had been a successful operation and that the alcoholic beverage license was still in effect. However, after entering a verbal agreement to lease and commencing renovations, they learned that the license had, indeed, been revoked by the governing authority and that no permit could be procured. Our Supreme Court, speaking through Justice Sanders in Marcello, held:
"Since the purchasers received no going business and could not secure a license to operate, we conclude that there was an error in the principal cause of the contract. It makes no difference whether we classify the error as one of fact or one of both fact and law. The result is the same. The contracts must be rescinded."
Because of the rescission of the contract of lease and the proof of record mandating the same, the lessee is entitled to recover those items of damages proved.
The record below shows that Uddo spent considerable sums of money in contemplation of establishing his business in Baton Rouge (Uddo 10 and 11). The largest sum, Fifteen Thousand Five Hundred and No/100 ($15,500.00) Dollars, was paid to San Francisco Bay Company for cancellation of its lease with GSA. Uddo 10 and 11 were admitted without objection. The total expenditures shown amount to Thirty-six Thousand Two Hundred Fifty-eight and 39/100 ($36,258.39) Dollars, including One Thousand and No/100 ($1,000.00) Dollars in attorney's fees to defend and prosecute the within lawsuit. We hold that Uddo is entitled to recover against defendant in reconvention, GSA, the sum of Thirty-five Thousand Two Hundred Fifty-eight and 39/100 ($35,258.39) Dollars, which represents his losses herein. We disallow any attorney's fee.
For the reasons assigned, the judgment of the trial court is affirmed as to the dismissal of the main demand.
Further, for reasons assigned, the judgment of the trial court dismissing the reconventional demand against GSA is reversed and set aside. Judgment is rendered in favor of plaintiff in reconvention, Peter Uddo, and against defendant in reconvention, GSA, in the amount of Thirty-five Thousand Two Hundred Fifty-eight and 39/100 ($35,258.39) Dollars, with legal interest thereon from judicial demand until paid.
Judgment is further rendered assessing all costs, trial and appellate, against defendant in reconvention, GSA.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] "If Lessee is prevented from conducting his restaurant operation on account of some legal prohibition that arises for causes unrelated to him and his operation and with which he had no causal connection, then and in that event this lease will terminate, at Lessee's option at such time as Lessee is put out of possession of the premises; but, provided Lessee has furnished written notice allowing 30 days for discussion. And if Lessee's occupancy is threatened by any notice, demand, or legal action Lessee will immediately notify Lessor and cooperate with Lessor in defence (sic) of any such threat to his possession and occupancy." (Plaintiff's Exhibit 3)