464 So.2d 1144 (1985)
Jackie GARDNER and Gardner Land Company, Inc.
v.
Johnny N. JONES.
No. 54563.
Supreme Court of Mississippi.
February 20, 1985.
*1145 Roy D. Powell, Jackson, for appellants.
Neil P. Olack, James L. Jones, Watkins, Ludlam & Stennis, Jackson, for appellee.
Before WALKER, P.J., and HAWKINS and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This action by a Lessee charges a Lessor with breach of a covenant of quiet enjoyment and several varieties of fraud. The problems arose because Jackson city zoning restrictions prevented Lessee from using the premises as he had intended. Lessee says Lessor should have told him of the zoning problems in advance.
As a result of the problems he encountered after entering the premises, Lessee was out of pocket some $5,450.35. By today's judgment we allow him recovery of that sum of and from Lessor. The evidence falls short of establishing gross or malicious conduct on the part of Lessor and, accordingly, we reverse the assessment of punitive damages and attorneys fees made against Lessor.

II.

A.
The evidence adduced at trial reflects that Gardner Land Co., Inc., one of the Defendants below and one of the Appellants here, owns the property commonly known by street number as 106 Lockwood Circle in Jackson, Mississippi. This property includes three lots denominated Lots 3, 4 and 5, Block F, Alemeda First Addition, a subdivision within the First Judicial District of Hinds County, Mississippi. Lots 3 and 4 adjoin each other end on end and together they adjoin Lot 5. Lots 3 and 4 together are the same size as Lot 5. A building is situated on Lots 3 and 4, while Lot 5 is vacant.
Lots 3 and 4 have been classified C-2, limited commercial, pursuant to the 1974 City of Jackson Zoning Ordinance. Lot 5 is zoned R-1-A, single family residential, and is also subject to restrictive covenants permitting residential use only.
Before August of 1979, Johnny N. Jones, the Plaintiff/Lessee here, operated a mobile home sales, repair and service business in Jackson. His business activities included buying and selling used mobile homes, repairing mobile homes and selling a variety of mobile home related inventory. These activities often required that mobile homes be parked at his place of business.
In August of 1979, Jones telephoned Jackie Gardner, President of Gardner Land Company, Inc.[1] to express interest in leasing *1146 the property and moving his entire business to it. In that conversation, Jones informed Gardner that he needed office facilities, a storage area and a place to park mobile homes. Gardner responded that the property at 106 Lockwood Circle was suitable for Jones' purposes.
Later, Jones and Gardner went to view the property. Jones measured the lots to determine how many mobile homes could be parked there. Jones mentioned that the building needed repairs and that the lot would have to be cleared of debris before the property would be suitable for his business. In addition, Jones offered to make several improvements to the building in consideration for a reduction in monthly rent.
The subject of zoning or other land use restrictions was never discussed between the parties. Gardner made the representation that the property was "suitable" for Jones' purposes, but there is no evidence in the record reflecting any clear understanding on the part of anyone as to whether "suitability" referred to the physical dimensions and capabilities of the property, land use restrictions imposed by law, or just what. Gardner testified that he never thought about zoning in connection with the negotiation of the lease, although as will be explained below, there is good reason why he should have. In any event, Jones never asked nor does it appear that he made any independent inquiry regarding the zoning classification of the property.
On August 14, 1979, Jones entered into a lease contract with the Gardner corporation for the lease of the property in question. The lease term was three years. Significantly, nothing in the lease specifies the use of the property contemplated by the parties, nor does any provision in the lease limit or restrict use on the part of lessee Jones. Gardner does guarantee in Paragraph 9 of the lease that Jones shall have
the quiet, peaceful and uninterrupted possession of the leased premises during the entire term of this lease and any extension thereof.
In an addendum to the lease, Jones agreed to make numerous repairs and improvements to the property. In return, the lease payments were reduced from $500 per month to $350 per month for the first year.
As soon as the agreement was reached, Jones began clearing the lot and repairing and renovating the building. Office space was expanded, carpet was laid, windows were repaired, locks were installed, and electrical wiring modified. Mobile homes and other inventory were moved onto the property. There is no question but that all of this was done by Jones in good faith reliance on the assumption that he would be able to operate his business on the leased premises.
After Jones had incurred these expenses, a field inspector from the Jackson zoning department informed Jones that his use of the property violated the city zoning ordinance, that his business could only be operated from property with a light industrial zoning classification, and that he would have to move the mobile homes from the property immediately.
Thereafter, a meeting was arranged between Jones, Gardner and a number of city officials. At this meeting, the City again informed Jones and Gardner that Jones' use of the property was illegal and must cease. After the meeting, Jones vacated the property and notified the City that he was no longer in violation of City zoning laws.
There is some evidence that Gardner subsequently attempted to obtain a permit for a nonconforming use under which Jones might have been permitted to continue his business on the premises. Gardner contends that Jones vacated the premises without giving him the opportunity to obtain the permit. The fact is clear, however, that no such nonconforming use permit sufficient to allow Jones to continue was ever issued[2] and, in view of certain concessions *1147 made by Gardner as described below, nothing turns on the point.
The critical issue on this appeal is whether the Gardners' conduct was so egregious as to merit an assessment of punitive damages. This points turns on whether Gardner maliciously or intentionally set out to defraud Jones by enticing him to enter a lease of the premises for a use which Gardner knew was illegal and would always remain illegal. Gardner insists that at the time of negotiation of the lease the subject of zoning never entered his mind. The import of his testimony is that he had no malicious or fraudulent intent regarding the zoning and land use restrictions of the property because, not having thought about them at the time, he had no intent at all.
Jones emphatically testified at trial that Gardner never informed him that Lot 5 was zoned residential or that the zoning classification for Lots 3 and 4 prohibited outside storage. Furthermore, Gardner failed to advise Jones that there were restrictive convenants pertaining to Lot 5. Gardner admitted at trial that he never advised Jones of the zoning status of the property or the existence of restrictive covenants for Lot 5, but added that Jones never asked.
At trial, the evidence clearly established that Gardner was aware of the zoning restrictions before he leased the property to Jones. In fact, Gardner was confronted with zoning violations relating to the use of the property as early as 1967.
In 1967, Joe Ponthieux leased the property from Gardner for a bumper repair business. During his tenancy, Ponthieux stored bumpers inside and outside the building located on the property. From the very beginning, the Jackson zoning and planning departments received complaints regarding the zoning violations. Pursuant to the 1950 Zoning Ordinance, storage of bumpers on Lot 5 conflicted with its residential zoning. In addition, the commercial zoning classification of Lots 3 and 4 prohibited outside storage of inventory.
On May 5, 1967, Ponthieux and Gardner signed and filed a petition with the city zoning department in an effort to rezone Lot 5 from a residential to a commercial classification. However, the city council denied the zoning change. From that point until Ponthieux vacated the premises in 1979, his use of the property for a bumper repair business was a continuous zoning violation. Ponthieux testified that he was contacted by the zoning department on several occasions regarding the violations. He further testified that he discussed the zoning violations with Gardner on as many as ten occasions and that his last conversation with Gardner was possibly as late as 1979.
Ponthieux's testimony was corroborated by the testimony of James Garland, field inspector for the city zoning department, by Lloyd Montgomery, former zoning director, and by William David Hardin, zoning administrator pro temp.

B.
Procedurally, Johnny N. Jones, Plaintiff below and Appellee here, commenced this action on June 24, 1981, by filing his declaration in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Named as Defendants were Gardner Land Co., Inc., a corporation, and Jackie Gardner, individually. Jones alleged a lease agreement wherein he was lessee and Gardner Land Company, Inc., was lessor and then charged both Gardners with breach of the covenant of quiet enjoyment, fraudulent misrepresentation and fraudulent concealment. Jones demanded actual and punitive damages.
Trial was held in the Circuit Court, sitting in Jackson, Mississippi, on March 29, 1982, and resulted in a jury verdict for *1148 Plaintiff Jones on all issues. On April 6, 1982, final judgment was entered in favor of Jones and against Gardner Land Co., Inc., and Jackie Gardner individually, jointly and severally, (a) for actual damages in the amount of $5,450.35, and (b) for Jones' attorneys fees incurred in prosecuting the action in the amount of $3,997.00. The judgment then separately assessed $10,000.00 punitive damages against Gardner Land Co., Inc., and $10,000.00 punitive damages against Jackie Gardner, individually.
The Gardners timely filed their alternative motions for judgment notwithstanding the verdict or for a new trial. By order entered April 8, 1982, the Circuit Court denied the motions. This appeal has followed.

III.
The Gardners' initial assignment of error is a challenge to the jury's verdict. That verdict, according to the Gardners, is contrary to law, is against the overwhelming weight of the evidence, and shows bias, partiality and prejudice. Presumably this broadside applies only to those portions of the verdict of the jury as assess punitive damages and attorneys fees, for the Gardners have subsequently admitted, both in their rebuttal brief and at oral argument, that Jones
is entitled to his actual damages resulting from the breach of the covenant of quiet enjoyment.
Those damages, it will be recalled, are in the amount of $5,450.35.
We are aware of no cases heretofore decided in this Court in which a landlord was held to have breached his covenant of quiet enjoyment by leasing property to a lessee contemplating a use prohibited by applicable zoning regulations. As the Gardners do not contest the point, it should not detain us. Suffice it to say that this result is consistent with that reached in at least one neighboring state. Guaranty Savings Assurance Co. v. Uddo, 386 So.2d 670, 674 (La. Ct. App. 1980); see also Walker v. Southern Trucking Corp., 283 Ala. 551, 554, 219 So.2d 379, 381 (1969).
To the extent that the Gardners' unfocused assault on the jury's verdict may have been more directed toward Jones' fraud theory  at least on the liability phase of the case  it is moot in view of his concession on the breach of the convenant of quiet enjoyment theory. Jones gets no more actual damages because there may be a second theory on which he may recover. Put more simply, a snake need be killed but once.

IV.

A.
The primary thrust of the Gardners' appeal is their challenge to the jury's assessment of punitive damages and attorneys fees. It will be recalled that the judgment below assesses $10,000 in punitive damages against Gardner Land Co., Inc., $10,000 in punitive damages against Jackie Gardner, individually, and $3,997 as attorneys fees against both Defendants, jointly and severally. We are urged that, considering the facts of this case, and applying the applicable standards of review, such awards may not stand as a matter of law.
At the outset, a point needs to be made clear. We are not here concerned with whether Jones has proved fraud. Punitive damages do not follow as the day the night every finding that a defendant has been guilty of fraud. Though fraud is frequently an ingredient of an award of punitive damages, it is clear from our cases that more is required. Therefore, for purposes of this section of this opinion, we will assume arguendo that Jones proved each of the recognized elements of a fraud calm. See Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984).
Punitive damages are assessed "only in extreme cases". Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss. 1983). We further wrote in Tideway that

*1149 the rule has long been well settled that punitive damages are recoverable where the defendant has done to the plaintiff such a wrong as to import insult, fraud, oppression or reckless disregard for the rights of plaintiff. [citation omitted] Punitive damages have long been assessable upon a showing of willful and intentional wrong, or for such gross negligence and reckless conduct as is equivalent to such wrong. [citation omitted] Punitive damages may be imposed for breach of contract where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort.
431 So.2d at 465-466.
See also Reserve Life Insurance Co. v. McGee, 444 So.2d 803, 808 (Miss. 1983); T.G. Blackwell Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972).
Two elements of this case suggest strongly that this is not a case for the assessment of punitive damages. First, the lease itself does not restrict the use of the property. Jones was free to use the property for any lawful purpose  and no doubt there were many. Cf. Hilbert v. Le, 434 So.2d 1354, 1355 (Miss. 1983) (use not specified in agreement and other uses were possible). Jones' case would be much stronger if he had been enticed by Gardner into the execution of a lease agreement under which the only permitted use was one in law not permitted.
Moreover, the lease agreement seems clear and unambiguous on its face. It is not at all apparent that parol evidence is or should have been admissible to vary the terms of the lease or to explain the parties intentions regarding use, although the point is not raised on this appeal. Even so, Gardner's oral representation of "suitability" was sufficiently vague and unclear of meaning as to render doubtful what was meant. Fraud must be proved by clear and convincing evidence. Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984) More to the point, awards of punitive damages should be based upon less ambiguous and speculative proof than what we have before us in this case.
Considering the evidence in the light most favorable to Jones, this is simply not one of those extreme cases in which punitive damages should be assessed. The outcome-determinative factor is the unimpeached evidence that Gardner, at the time of the negotiation and entry into the lease with Jones, was not even thinking about zoning problems. Moreover, Jones never asked specifically whether his intended use would be consistent with the property's zoning classification.[3] To be sure, such action on the part of Gardner was negligent. He had every reason as a prudent businessman having had zoning troubles in the past to know of the zoning of his property. On the other hand, the uncontradicted evidence of twelve years of ineffectual enforcement by City of Jackson bureaucrats is hardly the sort of experience that would charge Gardner with notice that Jones would be put out of business immediately upon his commencement of it. Because there is no evidence in this record of actual fraudulent or malicious intent on the part of the Gardner, we hold[4] that so much *1150 of the judgment below as assesses punitive damages against Gardner Land Co., Inc. and Jackie Gardner, individually, must be vacated.[5]See Bellefonte Insurance Company v. Griffin, 358 So.2d 387, 391 (Miss. 1978) (no punitive damages as a matter of law when denial of claim resulted from negligence of insurance company).

B.
Gardner challenges the award of attorneys fees included in the judgment below. In response, Jones cites the oft stated rule that attorneys fees may not be awarded as damages in a case unless punitive damages are also proper. See, e.g., Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979); Bellefonte Insurance Co. v. Griffin, 358 So.2d 387, 391 (Miss. 1978); City of Laurel v. Bush, 238 Miss. 718, 729, 120 So.2d 149, 155 (1960); Cooper v. United States Fidelity & Guaranty Co., 186 Miss. 116, 122, 188 So. 6, 7 (1939). Having held that the award of punitive damages may not stand as a matter of law, under the rule acceded to by Jones, the award of attorneys fees must fall as well. We take note that on closely analogous facts Guaranty Savings Assurance Co. v. Uddo, 386 So.2d 670, 674 (La. App. 1980) denied recovery of attorneys fees, although no rationale is given for the court's action.

V.
The Gardners also assigns as error the granting of several instructions requested by Jones, as well as the refusal of one they requested. The only point of consequence is Instruction No. P-9 which advised the jury regarding the elements of damages it might consider if it found that Gardner Corporation had breached its lease agreement. The instruction reads as follows:
Instruction No. P-9
If you find that the Defendant Gardner Land Co., Inc. breached the subject lease agreement, you may award actual compensatory damages to the Plaintiff Johnny N. Jones for the damages, if any, he sustained as a proximate result of the breach of the subject lease agreement. Such damages may include the following elements of damages:
1. The rents, if any, paid by the Plaintiff Johnny N. Jones, under the subject lease agreement as a result of the breach of the subject lease agreement by the Defendant Gardner Land Co., Inc.
2. The cost, if any, to the Plaintiff Johnny N. Jones, of any improvements to the leased premises.
3. The cost, if any, to the Plaintiff Johnny N. Jones of moving mobile homes to and from the leased premises.
4. The cost, if any, to the Plaintiff Johnny N. Jones for clearing and cleaning the leased premises.
5. The increased rents, if any, which the Plaintiff Johnny N. Jones paid at a new location.
The Gardners' complaint seems to boil down to a claim that Item 3 in Instruction P-9 allows Jones to recover the cost of moving mobile homes to and from the Lockwood Circle premises, and thus allows Jones a somehow impermissible double recovery. The instruction, however, advises the jury that it may award Jones only such damages as "he sustained as a proximate result of the subject lease agreement". *1151 The instruction then says that such damages may include the various elements stated. It was well within the evidence for the jury to have found that Jones moved mobile homes onto the leased premises in reliance upon the covenant of quiet enjoyment, and thereby incurred expenses, and it is similarly within the scope of the evidence in this case that Jones had to move the mobile homes off of the leased premises because of Gardner's breach of its covenant, thereby incurring additional expenses. The point is without merit.
The other assignments of error concern jury instructions regarding the punitive damages and attorneys fees issue. Because of the disposition we made of those issues above, these assignments of error are moot.
Defendant's requested Instruction No. D-19 is an elaboration upon the definition of fraud. It was refused by the trial court. Because we have found it unnecessary to address the liability features of the fraud issue, this assignment of error is of no moment.

VI.
A point must be noticed as plain error. Rule 6(b), Miss.Sup.Ct.Rules. So much of the final judgment as awards actual damages to Jones runs against Gardner Lane Company, Inc. and Jackie Gardner, jointly and severally. The lease agreement sued upon, however, was executed by the corporation only. The evidence is undisputed that at all times Jackie Gardner was an agent for a disclosed principal. As such he incurs no individual liability. Griffin v. Ware, 457 So.2d 936, 940 (Miss. 1984); Thames & Co. v. Eicher, 373 So.2d 1033, 1035 (Miss. 1979). The judgment for actual damages entered against Jackie Gardner, individually, must be reversed.

VII.
By reason of what we have said above the judgment below in favor of Johnny N. Jones and against Gardner Land Co., Inc., in the amount of $5,450.35 as compensatory damages is affirmed. That judgment shall bear interest as provided by law from the date of its entry, April 6, 1982. The judgment for actual damages entered against Jackie Gardner, however, is reversed and rendered. Beyond that, so much of the judgment below as assesses punitive damages against Jackie Gardner and Gardner Land Co., Inc., is reversed and rendered, as is that portion of the judgment which awards attorneys fees in favor of Jones and against Jackie Gardner and Gardner Land Co., Inc.
AFFIRMED IN PART, REVERSED IN PART.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER and SULLIVAN, JJ., concur.
ANDERSON, J., not participating.
NOTES
[1] Jackie Gardner, individually and the corporation, Gardner Land Company, Inc., are sometimes hereinafter collectively referred to as "the Gardners".
[2] After Jones vacated the property, Gardner filed a zoning action application on behalf of Gardner Land Company to rezone Lot 5 from R-1-A to C-3, and Lot 4 from C-2 to C-3. In the alternative, Gardner asked that Lots 3 and 4 be granted a use variance so that a plumbing business could be operated on those lots. The city council denied the rezoning application but granted the use variance. A petition for reconsideration was filed by Gardner but was denied. The property was eventually leased to a plumbing business in accordance with the use variance. However, Gardner testified that a fan repair business also was occupying the property, which Gardner readily admitted was in violation of the use variance.
[3] Contributory negligence is not  and should not be  a defense to a fraud action or in one of those extreme cases where punitive damages may be assessed. H.D. Sojourner & Co. v. Joseph, 186 Miss. 755, 770, 191 So. 418, 422 (1939). More specifically, one may not resist his plaintiff's claim regarding fraudulent sale of lands on grounds that the public record would have disclosed the true state of the title. Guastella v. Wardell, 198 So.2d 227, 230-231 (Miss. 1967). Cases of this type necessarily focus on the conduct of the defendant. Still, in evaluating that conduct in a case like this we do not regard it as irrelevant that Gardner made his deal with Jones in a setting where the terms of the applicable zoning classification and any restrictive covenants were of public record and readily available to all. After all, in land transactions it is customary that the buyer/lessee, or its attorney, examine the title, not the seller/lessor.
[4] Our holding is predicated upon the law of this state as applied to the facts of this case. Insofar as we are aware, there is no prior case in this state where punitive damages have been sought by a lessee for fraudulent misrepresentation or fraudulent concealment by a landlord regarding zoning restrictions. There has been extensive litigation in this area of landlord and tenant law, however, in other states. See Annotation, Rights Between Landlord and Tenant As Affected By Zoning Regulations Restricting Contemplated Use of Premises, 37 A.L.R.3d 1018 (1971). We have extensively researched the question even beyond the scope of the above A.L.R. annotation and are not wholly uninfluenced by the fact that we have been unable to find a reported case anywhere in the United States in which punitive damages have been awarded to a tenant in such a context, nor by the fact that no such case has been called to our attention by counsel.
[5] We recognize that in prior cases we have expressed a great reluctance to interfere with the amount of a punitive damages assessment made by a jury. Reserve Life Insurance Co. v. McGee, 444 So.2d 803, 812 (Miss. 1983); Snowden v. Osborne, 269 So.2d 858, 861 (Miss. 1972). Whether the proof is sufficient to sustain an assessment of punitive damages at all, however, is a question subject to the same scope of review as we exercise in reviewing jury verdicts generally. Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 656-657 (Miss. 1975).