517 So.2d 507 (1987)
CENTRAL BANK OF MISSISSIPPI (Now First United Bank)
v.
Grady BUTLER, Jimmy Coker, Robbie Gavin, Herman Hill, Don Jones, Buster Ruffin, Clurie Shelby, C.A. Thigpen, Stacy Burnham, Linda Burnham and Paul Rodgers.
No. 57017.
Supreme Court of Mississippi.
October 7, 1987.
Rehearing Denied January 20, 1988.
James R. Mozingo, Mark C. Carlson, Stennett, Wilkinson & Ward, Earl Keyes, Keyes, Moss, Piazza & Woods, Jackson, for appellant.
*508 William R. Ruffin, Bay Springs, John I. Donaldson, Thomas, Price, Alston, Jones & Davis, Jackson, for appellee.
En Banc:
PRATHER, Justice, for the Court:
Sellers of livestock filed suit against Central Bank of Mississippi alleging Central Bank had improperly set off trust funds properly belonging to the sellers. From a decision in the Chancery Court of Rankin County awarding sellers actual and punitive damages plus attorneys' fees, Central Bank of Mississippi appeals, assigning as error:
(1) The trial court erred in finding that Central Bank improperly set off funds from the account of Central Mississippi Livestock Exchange and in awarding actual damages of $57,916.
(2) The trial court erred in failing to reduce appellee's award of actual damages by the amount of surety bond payments made to appellees and by recoupments received by certain appellees prior to filing suit.
(3) The trial court erred in finding that the facts of the case and the law warrant the assessment of punitive damages and reasonable attorneys' fees against the appellant.
(4) The chancery court erred in awarding excessive punitive damages against appellant.

I.
In March, 1983, Central Mississippi Livestock Exchange (CMLE), a Mississippi corporation, was an ongoing business in Bay Springs, Jasper County, Mississippi. CMLE had been conducting Wednesday livestock sales since October, 1980. The president, manager, and primary stockholder of CMLE was Wesley Hendry, who was also the primary stockholder of the Wesley Hendry Land & Cattle Co., Inc. The two corporations were distinct and separate.
Also during March 1983, Central Bank of Mississippi (CBM) was a Mississippi banking corporation with its principal place of business in Brandon, Rankin County, Mississippi. CBM later became the Brandon branch of the First United Bank.
CMLE maintained two checking accounts with CBM  a "general" account and a "custodial" account. CMLE, being subject to the Packers and Stockyards Act, 1921,[1] was required to maintain a custodial account pursuant to 9 C.F.R. § 201.42 (1987), which describes payments for livestock as "trust funds." Also maintained at CBM was a separate checking account for the Wesley Hendry Land and Cattle Company (Cattle Co.).
During CMLE's business operations, through prior arrangement with the bank, it was permissible for CMLE to deposit sale proceeds into its general account, but pay sellers from the custodial account. Funds were regularly transferred by CBM from the general account to the custodial account to cover the custodial account checks. The requirements of the Federal Packers and Stockyards Act was the basis for this arrangement.
Also during CMLE's business operations, CMLE was required to pay cattle sellers on sale day, but CMLE allowed buyers 72 hours to remit payment. As a result, CMLE's custodial account was often in overdraft. However, by oral agreement with the bank, CBM honored CMLE's checks until funds were deposited into the general account and transferred to the custodial account. CBM, therefore, knew that under the federal act the payments for livestock were trust funds and were contained in the general account awaiting their transfer to the custodial account.
On March 9, 1983, CMLE conducted sales in which the appellees were sellers. (Hereinafter "Sellers").[2] Each seller was issued a check drawn on CMLE's custodial account on sale day. In addition, the proceeds of the sales, $125,747, were deposited into CMLE's custodial account. The Sellers' *509 checks, totaling $57,916, were later dishonored.
CMLE's $125,747 deposit was composed of checks, instead of cash. At the time of the deposit, CMLE's general account reflected the bookkeeping entry of the $125,747 deposit. Only after the deposited checks were honored by the banks on which they were drawn would the transfer be made to the custodial account.
While the bank was waiting for the funds to be paid on the $125,747 deposit, it posted its own cashier's check against CMLE's general account, without authority of Wesley Hendry, and credited that sum to the Wesley Hendry Land and Cattle Company account to cover an overdraft there. Later the bank dishonored the checks written to the Sellers on the custodial account as "Drawn Against Uncollected Funds." The money collected for livestock payments was then retained by the Bank for repayment of the funds it had paid in overdraft for the Cattle Company's account.
The end result was that the money paid by livestock buyers for the Sellers' cattle was kept by the bank instead of remitted to the Sellers. The Bank asserts that their additional payment of an approximately $125,000 overdraft in the custodial account should offset any liability to these plaintiffs.
Shortly afterward, CMLE was launched into involuntary bankruptcy. Eventually, the Sellers received approximately 37% of the face amount of their dishonored checks from CMLE's bonding company. The Sellers subsequently brought this suit.
In the complaint, the Sellers alleged that CBM wrongfully used the trust funds in CMLE's general account to offset a debt owed the bank by Wesley Hendry Land & Cattle Company. The case was transferred from Circuit Court to the Chancery Court of Rankin County. The chancellor held that CBM had improperly transferred the trust funds and awarded $57,916 actual damages, $55,000 punitive damages, and $11,000 attorneys' fees. CBM then perfected this appeal.

II.

Do the plaintiffs have standing to sue the bank?
Initially, the question of these plaintiffs standing to sue the bank arises. The prior cases of this Court state that a holder of a check has no cause of action against a bank, but must look to the drawer of the check. The drawer of the check can complain to the bank for dishonoring of the check. Deposit Guaranty National Bank v. B.N. Simrall & Son, Inc., No. 56,469 (Miss. April 8, 1987) (not yet reported); Citizens National Bank v. First National Bank, 347 So.2d 964, 968 (Miss. 1977); See also: Miss. Code Ann. § 75-3-409. However, factors that distinguish the instant case, making exception to the application of the above rule, are (1) the federal act designates payments for livestock as trust funds and (2) the depositor is acting as a fiduciary. 7 U.S.C.A. §§ 181-229 (1980).
The majority rule on this point is stated in Bank of West Orange v. Associates Discount Corp., 197 So.2d 858 (Fla.App. 1967).
The simple deposit of money, check or draft in a commercial bank on account of the depositor, without being complicated by any other transaction than that of depositing and withdrawing money, is a general deposit. However, when a draft is deposited with a bank for collection to be remitted, such deposit is special and right to the deposit remains in the depositor. The bank under such circumstance, becomes bailee, trustee or agent for the depositor. Collins v. State, 1894, 33 Fla. 429, 439 and 440, 15 So. 214, 217 and 218.
A deposit in a bank is a general or special deposit depending upon the contract which results from the mutual understanding and intention of the parties. No particular form of such a contract is prescribed. Tunnicliffe v. Sears, 1932, 107 Fla. 669, 148 So. 197. The purpose and terms of a special deposit may be fixed by express agreement, or the intention of the parties may be inferred from their declarations at the time the deposit was made when considered in *510 connection with their conduct and all the other circumstances surrounding the transaction. It also follows that, when a bank receives money to be applied to a particular purpose and it fails to properly apply it, such bank becomes a trustee and is answerable to the owner of the money as for a breach of trust. Bryan v. Coconut Grove Bank & Trust Co., 1931, 101 Fla. 947, 132 So. 481, 134 So. 229; Northern Sugar Corp. v. Thompson, 8 C.A. 1926, 13 F.2d 829, at p. 832; Central Bank and Trust Co. v. Shipman, Fla.App. 1961, 127 So.2d 706. Under such circumstances title to the deposit remains in the depositor, and the relation of debtor and creditor does not exist. See cases collected in 86 A.L.R. 375.
197 So.2d at 861-2. See also Citizens National Bank v. First National Bank, 347 So.2d 964, 967 (Miss. 1977); 10 Am.Jur.2d, Banks § 367 (1963); 9 C.J.S. Banks and Banking § 274a. (1938).

III.

Did the chancellor err in finding CBM liable to appellees?
This Court recently held in Deposit Guaranty National Bank v. Simrall, No. 56,469 (Miss. April 8, 1987) (not yet reported) that "funds deposited to a general account belong to the bank, with the bank becoming a debtor to the owner of the account for the amount on deposit. Id., slip op. at 9. The Court in Simrall also held that "a bank, under a `set off' principle, has the right to apply a debtor's deposit to payment of his debt then due aside from any security agreement specifically authorizing it to do so." Id.
Although the facts of Simrall are similar to the instant case, Simrall is distinguishable and not dispositive of the case at bar.
In Simrall, cotton buyers, who were involved in a joint venture with a Memphis buyer, maintained a general business checking account with the Yazoo City branch of the Deposit Guaranty National Bank of Jackson. Referred to in the opinion as "Barriers," the Yazoo City cotton buyers were extended a $15,000,000 line of credit by Deposit Guaranty Bank for which Barriers executed a security agreement giving Deposit Guaranty Bank the right to "appropriate and apply to any indebtedness secured hereby, whether or not then due, any monies now or thereafter held by Bank on deposit or otherwise to the credit or belonging to the debtor ..." Id., slip op. at 5.
During the course of its business operations, Barrier purchased cotton from Simrall, who was issued a check on Barriers general business account. Before Simrall presented the check for payment, Deposit Guaranty Bank, who had become alarmed at Barrier's financial condition, offset a deposit intended for payment of Simrall's check. When Simrall presented his check, it was dishonored because of insufficient funds.
Simrall was successful against Deposit Guaranty Bank in the Circuit Court of Yazoo County, but this Court reversed, holding that Deposit Guaranty Bank was entitled to set off the funds deposited into Barriers' general business account. Paramount to this Court's decision were several distinguishing factors: (1) The funds deposited to pay Simrall's check were not specifically designated; (2) the Barrier account was a "general" business account; (3) the funds set off by Deposit Guaranty Bank were not trust funds.
When a bank has knowledge of a trust, special deposit, or other type of fiduciary relationship between its depositor and a person, the bank cannot set off such funds against the individual indebtedness of the depositor of the bank. Simrall, slip op. at 11; Lumberton State Bank v. Fortenberry, 222 So.2d 384, 388 (Miss. 1969). See generally, Annot. 8 A.L.R.3d 235 (1966). The facts in Simrall failed to prove the set off funds were trust funds.
In the present case, there is no dispute that payments made for livestock are trust funds pursuant to federal law. 9 C.F.R. § 201.42 (1987), promulgated under the Packers & Stockyards Act, 7 U.S.C.A. §§ 181-229 (1980), specifically states, "Each payment that a livestock buyer makes to a market agency selling on commission *511 is a trust fund. Funds deposited in custodial accounts are also trust funds." (Emphasis added). The nature of the funds in this case distinguishes the case from Simrall.
Unlike the record in Simrall, the instant record is replete with proof that CBM was aware of the trust nature of the funds. This proof is composed primarily of the knowledge of Jim Whitehead, CBM's president, concerning CMLE's business operations. Wesley Hendry testified he had discussed the Packers and Stockyards Act on several occasions with Whitehead. In addition, there is testimony that CMLE's accounts were originally opened at another bank of which Whitehead was an officer, but were moved to CBM when Whitehead was transferred there.
CBM argues the cashier's check it drew against CMLE's account did no harm to the Sellers because the checks issued to the Sellers were dishonored prior to the time the funds represented by the $125,747 of checks had been received by CBM from the payor banks. In other words, the checks issued to the Sellers would have been dishonored regardless of the $124,116 cashier's check because the funds designed to cover the checks remained uncollected.
CBM's argument overlooks the fact that a trust was imposed on each payment made for the sellers of livestock and those trusts did not dissipate simply because the checks issued to the sellers found their way back to the bank before the trust funds did. While the bank may exercise discretion in paying or not paying accounts into overdraft, it may not retain trust funds properly belonging to other parties once the trust funds are received.
There is also mention in the appellant's brief that the set off transaction was made against CMLE's general account instead of its custodial account. It is the nature of the funds, not the name of the account, that controls whether the funds may be set off. In this case, the funds were trust funds and were not subject to set off.
To further compound CBM's error of using trust funds to set off a debt, the Wesley Hendry Land & Cattle Company account to which the transfer transaction was made had no business connection with CMLE  the two companies simply shared the same primary stockholder. The two companies are separate and distinct under the law.
It is clear that a bank may apply through offset a debtor's deposit to payment of his debt, however, it is not clear that a bank may apply one corporation's funds to offset a debt owed by a separate and distinct corporation.
Addressing a similar issue, the Fifth Circuit Court of Appeals held:
The right of the bank exists only where with respect to both debt and deposit the bank and the depositor are in debtor-creditor relationship, and there must be mutuality of demands. [Citation omitted]. The debts must be between the same parties and in the same "right" or capacity, so that, for example, the bank (having notice of the character of the deposit) cannot set off against a depositor's individual debt a deposit made by him in his capacity as a public officer or as executor or administrator.
Kaufman v. First National Bank of Opp, Alabama, 493 F.2d 1070 (5th Cir.1974).
For the reasons given above, this Court holds there was no error in finding CBM liable to the seller appellees.

IV.

Did the trial court err in refusing to reduce appellee's award of actual damages?
CBM's primary argument under this assignment of error is that liability for actual damages should be reduced by approximately 37%, the amount the Sellers received from CMLE's surety bond.
Mississippi has adopted and follows the "collateral source rule." Under this rule, a defendant tortfeasor is not entitled to have damages for which he is liable reduced by reason of the fact that the plaintiff has received compensation for his injury by and through a totally independent source, separate and apart from the defendant *512 tortfeasor. Preferred Risk Mutual Insurance Co. v. Courtney, 393 So.2d 1328, 1331 (Miss. 1981); Clary v. Global Marine, Inc., 369 So.2d 507, 510 (Miss. 1979); Coker v. Five-Two Taxi Service, Inc., 211 Miss. 820, 826, 52 So.2d 356, 357 (1951).
In the instant case, the bond which produced payment was maintained by CMLE, not CBM. Although the bond was for the benefit of sellers of livestock, it was maintained completely independent of any efforts made by CBM. For those reasons, this writer submits the trial judge correctly applied the collateral source rule to the facts of this case.
CBM's second contention under this assignment of error is that the awards to Grady Butler, Robbie Gavin, and Jimmy Coker should be reduced because there have allegedly been credits, recoupments, and improper claims made.
These arguments are similar to CBM's argument against applying the collateral source rule in that CBM attempts to take advantage of mitigating circumstances created by parties other than itself. CBM is liable in actual damages for the entire amount of the trust funds it improperly set off, regardless of any amounts recouped by the appellees from other sources.

V.

Did the trial court err in awarding $55,000 of punitive damages and $11,000 attorneys' fees?
After the Chancery Court of Rankin County rendered its opinion May 17, 1985, it reconvened July 9, 1985 to determine what amount of punitive damages and attorneys' fees to award. Authority of the chancery court to award punitive damages is without question. Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983). After receiving proof of CBM's financial condition and hearing other testimony, the chancellor awarded $55,000 punitive damages and $11,000 attorneys' fees.
Punitive damages are assessed as an example and warning to others and should be allowed only with caution and within narrow limits. Standard Life Insurance Company of Indiana v. Veal, 354 So.2d 239, 247 (Miss. 1977); State Farm Fire & Casualty Co. v. Simpson, 477 So.2d 242, 249 (Miss. 1985).
Punitive damages are assessed only in extreme cases. Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss. 1983) "[P]unitive damages are recoverable where the defendant has done to the plaintiff such a wrong as to import insult, fraud, oppression or reckless disregard for the rights of the plaintiff." Gardner v. Jones, 464 So.2d at 1149.
Regarding attorneys' fees, this Court has held that in the absence of contractual provisions or statutory authority, attorneys' fees may not be awarded as damages in a case unless punitive damages are also proper. Grisham v. Hinton, 490 So.2d 1201, 1205 (Miss. 1986); Gardner v. Jones, 464 So.2d 1144, 1150 (Miss. 1985); Aetna Casualty & Surety Co. v. Steele, 373 So.2d 797, 801 (Miss. 1979).
Having submitted the relevant facts and the applicable caselaw, this Court affirms the award of punitive damages and attorneys' fees as proper under these facts.

VI.
The chancellor in this case held that CBM improperly set off trust funds properly belonging to the appellees in this case, which holding on the liability issue is affirmed, together with an award of $57,916 actual damages, $55,000 punitive damages, and $11,000 attorneys' fees.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, P.J., concurs as to parts I, II, III, IV and VI and dissents as to part V.
NOTES
[1] 7 U.S.C.A. §§ 181-229 (1980).
[2] Plaintiffs did not comprise the entire class of unpaid cattle sellers and do not sue in any representative capacity.