# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00996-SCT

*CAROLYN WILLARD*

*v.*

*PARACELSUS HEALTH CARE CORPORATION, PARACELSUS SENATOBIA COMMUNITY HOSPITAL, INC., CAROLYN REVEL AND DANNY SWINDLE*

### CONSOLIDATED WITH

### 92-CA-01274-SCT

*BETTIE SUE SUMNER*

*v.*

*PARACELSUS HEALTH CARE CORPORATION, PARACELSUS SENATOBIA COMMUNITY HOSPITAL, INC., AND CAROLYN REVEL*

### CONSOLIDATED WITH

### 93-CA-00021-SCT

*BETTIE SUE SUMNER*

*v.*

*PARACELSUS HEALTH CARE CORPORATION, PARACELSUS SENATOBIA COMMUNITY HOSPITAL, INC., AND CAROLYN REVEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/92 |
| TRIAL JUDGE: | HON. ANDREW CLEVELAND BAKER |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | NANCY ALLEN WEGENER |
| | MICHAEL T. LEWIS |
| ATTORNEY FOR APPELLEES: | GERALD W. CHATHAM, SR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**PITTMAN, JUSTICE, FOR THE COURT:**

## Summary of the Case

¶1. The Appellants, Carolyn Willard and Bettie Sue Sumner, were employees of Senatobia Community Hospital, a wholly owned subsidiary of Paracelsus Health Care Corporation.[1] Willard and Sumner reported to higher-ups that a certain number of Paracelsus checks were made out to hospital administrator Carolyn Revel as well as signed by Revel and allegedly done so in violation of hospital policy. Willard, and then Sumner, were subsequently discharged. The gist of their case at trial was that they were fired by Revel in retaliation for reporting the checks. Paracelsus cited other reasons. Willard and Sumner had separate trials; however, their cases are consolidated on appeal. Willard and Sumner address the same issues on similar facts.

¶2. The juries returned a verdict against Paracelsus and awarded actual damages in the amount of $10,000 to Willard and $35,102 to Sumner. Special interrogatories were submitted to both juries in which they found that Willard's and Sumner's discharges were in violation of their contracts with the hospital as supplemented by the handbook and personal policy and procedure manual. Neither jury found that the hospital intentionally inflicted emotional distress upon Willard nor Sumner.

¶3. We are called on to decide whether the trial courts erred by refusing to give the juries an instruction on retaliatory discharge, and further, if such error was committed, whether the juries should have been allowed to consider an award of punitive damages based on retaliatory discharge. Additionally, we must determine whether the lower courts erred by failing to grant a punitive damages instruction based on tortious breach of contract. We hold that the trial court erred on both of these points. Furthermore, the lower courts erred by denying Willard and Sumner attorney's fees under M.R.C.P. 37(a)(4), because they succeeded on their motion to compel discovery.

## Summary of the Facts

¶4. Willard was hired on July 27, 1988, and received a copy of the Senatobia Community Hospital Employee Handbook. She signed a card acknowledging the receipt of this handbook and also acknowledging that she had familiarized herself with it.

¶5. Willard was the accounts payable clerk before being promoted to business office manager. She had the responsibility of doing the bank reconciliation. After her promotion and while she was training the new accounts payable clerk, she continued to do the bank reconciliation. Most Paracelsus checks were keyed into the computer and were printed by the computer along with a department code. Manual checks were typed on the typewriter. They were used in emergencies only when an immediate payment was necessary. Copies or backups of manual checks were retained in the accounts payable office for two years.

¶6. In August 1990 Willard received a copy of the July bank statement which was faxed from Paracelsus headquarters in California. When Willard tried to match the bank statement with the check ledger, there were three checks on the bank statement which were not in the ledger nor in the computer system. These amounts were $2,500, $3,000 and $2,000. Willard searched all files and records trying to locate the checks. She could not locate any of the backup documents. Three weeks later when the canceled checks arrived, she found the three unaccounted for checks in the above

amounts made payable to Carolyn Revel and signed by Revel and Clifford Olson. Clifford Olson was the former chief financial officer for Paracelsus who had left his employment at the hospital. He testified that he did not sign the three checks. Willard, Sumner (an administrative secretary who had authority to sign Paracelsus checks), and Kiefer (the new accounts payable clerk) confronted Olson. Willard also reported the conduct to Pete Mistr, the regional chief financial officer in Nashville. Willard claimed she was subsequently discharged for these actions. Willard's personnel file contained no reprimands and only outstanding evaluations.

¶7. Additionally, Sumner reported two checks that arrived later in August and were made out to Revel. She testified that these two checks contained Revel's signature and her (Sumner's) own forged signature.

¶8. The evidence at trial showed that all original documents relevant to the suspicious checks were missing although they were kept in several different locations. The only copies of the five forged checks were those provided by Willard and Sumner. None of the five original checks or the yellow and pink copies of the checks or the accounts payable for that period were produced. However, Kiefer claimed to have seen these records and sent them to storage two weeks before the auditors were to examine them. Not long after, a break-in occurred at the storage facility in which these records were purportedly stolen.

¶9. Revel and Paracelsus maintained at trial that Willard was not fired but that she resigned. Revel testified that she was paged at the hospital on August 22, 1990, by Danny Swindle, who replaced Olson. At that time Swindle told Revel that Willard wanted her money and was leaving. According to Revel, Swindle was trying to discuss with Willard some complaints they had received about accounts payable when Willard up and quit.

¶10. Revel also testified that she had seen Olson's deposition wherein he stated he did not sign the three checks and noted that as soon as it came to her attention she thought it might be forgery. However, she stated that if she as hospital administrator signed the check, it was not necessary that the check be signed by another person.

¶11. On September 17 Sumner was terminated by Revel for, among other things, an incident involving a woman demanding treatment in the hospital's emergency room. Sumner maintained at trial that her termination was a result of her conduct in reporting the checks. Sumner also testified that she thought she had certain rights as stated by the handbook. Particularly, she thought Paracelsus should follow the disciplinary procedures set out in the handbook for a first offense. Only for a critical offense could you be terminated on a first offense. The only critical offenses were theft or dishonesty. Such a termination required a three-day suspension while an investigation was undertaken. This procedure was not followed for Sumner or Willard nor were the procedures for other types of offenses followed.

¶12. Sumner had never received an oral or written reprimand. Her personnel file revealed no negative reviews.

Chronology

1990

First Week Willard and Sumner report three checks.

in Aug.

Aug. 22 Willard leaves.

Aug. 27 Sumner reports two checks.

Sept. 5 Revel repays Paracelsus for three checks (the two allegedly co- signed by Sumner and the one co-signed by Olson).

Sept. 6 Revel reduces Sumner's job description.

Sept. 14 Emergency room incident.

Sept. 17 Sumner is fired.

¶13. Paracelsus maintained from the beginning of the lawsuits that it did not acknowledge the handbook. Revel testified at the Willard trial that she did not recognize the handbook, because it was issued when the hospital was under the control of someone other than her employer, Paracelsus. At the Sumner trial, Revel testified that there was a handbook, but it was undergoing revision.

Discussion of the Law

I. DID THE TRIAL COURT ERR BY REFUSING TO GIVE A RETALIATORY DISCHARGE INSTRUCTION?

¶14. We addressed this issue in *McArn v. Allied Bruce-Terminix, Inc.*, 626 So. 2d 603, 607 (Miss. 1993), where we ruled that there is an action at law based on a public policy exception to the employment at-will doctrine in either of the two following circumstances: 1) an employee refuses to participate in an illegal act; or 2) an employee is discharged for reporting illegal acts of his employer to the employer or anyone else. At that time, we did not address the question of whether or not such conduct by an employer, if found, is an independent tort giving rise to punitive damages.

¶15. Paracelsus argues that our holding in *McArn* is not applicable, because *McArn* was decided subsequent to the trial in the case sub judice. Yet, *McArn* was a case of first impression, and we applied the employment-at-will exceptions retroactively by remanding McArn's case. Therefore, Paracelsus' argument based on the subsequent determination of *McArn* is not determinative of whether or not it was error to deny a retaliatory discharge instruction.

¶16. Clearly, the jury should have been given an instruction on retaliatory discharge. The evidence at trial or, rather, the lack of evidence suggests that Willard and Sumner were fired in retaliation for reporting an illegal act of their employer, i.e., forgery and financial irregularities. Sumner and Olson both testified that the co-signatures on the copies of the checks provided by Willard and Sumner were not theirs. Had the jury been properly instructed on the theory of retaliatory discharge, it is quite conceivable that they would have returned a verdict for Willard and Sumner on this issue. Nevertheless, the jury should have had that option.

¶17. The exception to the employment-at-will doctrine sounds in tort, and we recognize, as the

majority of jurisdictions do, that a party is entitled to pursue all remedies available in tort, including punitive damages. For example, in *Moniodis v. Cook*, 494 A.2d 212, 218 (Md. App. 1985), an employer terminated an employee for refusing to take a polygraph test regarding the amount of inventory in stock. A Maryland law prohibited the requirement of a polygraph test as a condition to employment. The court held that the employer acted with malice, because it knew of the law, and so ruled that punitive damages were appropriate. Furthermore, the court stated that such damages "beneficially served the punitive and deterrent purposes of exemplary damages." *Id. See also McClung v. Marion County Comm'n*, 360 S.E.2d 221, 229 (W.Va. 1987) (punitive damages recoverable for retaliatory discharge where the defendant's conduct was wanton, willful or malicious) . *But see Smith v. Atlas Off-Shore Boat Service, Inc*., 653 F.2d 1057, 1063-1064 (5th Cir. 1981) (where the Fifth Circuit held that punitive damages could not be recovered by a seaman discharged for filing a personal injury claim against his employer).

¶18. Today, we answer in the affirmative the question of whether such conduct, if found, is an independent tort giving rise to punitive damages. The public has a legitimate interest in seeing that people are not discharged for reporting illegal acts or not participating in illegal acts which may result in harm to the public interest. Anyone who terminates an employee for such reasons should be allowed a jury instruction on the issue of punitive damages in order to deter similar future conduct. Discharge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages.

¶19. However, a violation of the public policy exception to the employment at-will doctrine does not per se create a jury issue on the award of punitive damages. It will remain within the purview of the trial court to determine whether this issue should be submitted to the jury. The trial court must decide if "under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable hypothetical trier of fact could have found either malice or gross neglect/reckless disregard." *Wirtz v. Switzer*, 586 So. 2d 775, 783 (Miss. 1991). On remand the trial court may consider the submission of a punitive damages instruction based on the independent tort of retaliatory discharge.

II. DID THE TRIAL COURT ERR BY REFUSING TO GRANT AN INSTRUCTION ALLOWING THE JURY TO AWARD PUNITIVE DAMAGES IF THEY FOUND A TORTIOUS BREACH OF CONTRACT?

¶20. Willard and Sumner contend that it was error for the trial court to deny an instruction for punitive damages based on tortious breach of contract. The Court has repeatedly stated that punitive damages are recoverable for breach of contract when such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort. *Peoples Bank and Trust Co. v. Cemack,* 658 So. 2d 1352, 1361 (Miss. 1995)*; Eselin-Bullock & Associates Ins. Agency, Inc. v. National General Ins. Co.*, 604 So. 2d 236, 240 (Miss. 1992); *Strickland v. Rossini*, 589 So. 2d 1268, 1273 (Miss. 1991); *Fought v. Morris*, 543 So. 2d 167, 173 (Miss. 1989).

¶21. The basis for Willard's and Sumner's contentions is that Revel breached the hospital's employment handbook concerning disciplinary procedures. Specifically, they assert that Revel's refusal to recognize the existence of the handbook and its termination procedures rose to the level of a tortious breach. Paracelsus maintains that the trial judges' rulings should be upheld because this is

not an extreme case as required by law when considering an award of punitive damages.

¶22. Both trial judges ruled that this was not a punitive damages case. In the Sumner case, the trial judge recognized that Revel failed to acknowledge the handbook, however, upon considering the totality of the circumstances, he found this not to be a punitive damages case. The standard of review regarding the refusal of a requested jury instruction was pronounced in *Hill v. Dunaway*, 487 So. 2d 807, 809 (Miss. 1986):

> [O]ur rule is this: [t]he refusal of a timely requested and correctly phrased jury instruction on a genuine issue of material fact is proper only if the trial court - - and this Court on appeal - - can say, taking the evidence in the light most favorable to the party requesting the instruction, and considering all reasonable favorable inference which may be drawn from the evidence in favor of the requesting party, that no hypothetical reasonable jury could find the facts in accordance with the theory of the requested instruction.

(citations omitted)

¶23. The juries in these cases found that Paracelsus 1) discharged Willard in violation of the verbal contract with her as supplemented by the handbook, and 2) discharged Sumner in violation of her contract as supplemented by the handbook and the policies and procedural manual.

¶24. Considering the evidence and the jury's special findings, it is possible that the jury could have found that this breach of contract was an intentional wrong committed by Paracelsus. Willard and Sumner had outstanding personnel files. They were terminated on questionable grounds, and the policies of the handbook were not followed in the process. The uncontradicted evidence indicates that Revel wrote checks out to herself and either forged co-signatures or had someone else do so. The backup documents were allegedly stolen and there was no record of these checks or what purpose they served. Willard and Sumner reported what they believed were financial irregularities and were subsequently discharged or constructively discharged. Paracelsus did not follow the contractually stated procedures for the corresponding offenses of Willard and Sumner but even more outrageous is their subsequent termination in view of impeccable personnel records. It is possible that a reasonable jury could find an intentional wrong here necessitating the imposition of punitive damages. The trial courts may reconsider submitting a punitive instruction to the jury on this basis as well.

## III. DID THE TRIAL COURT ERR BY DENYING WILLARD'S AND SUMNER'S POST TRIAL MOTIONS FOR ATTORNEY'S FEES?

¶25. Willard and Sumner both filed a motion for award of attorney's fees in the trial court. The motions set out three reasons for their entitlement to attorney's fees: 1) Such fees are a reasonably foreseeable result of Paracelsus' conduct in breaching the employment contract, 2) Paracelsus filed a frivolous motion to compel counsel to withdraw, which was unsupported by any evidence, and 3) Paracelsus needlessly protracted the litigation by failing to file an answer timely and Willard and Sumner were successful on their motion to compel under M.R.C.P. 37. The trial courts denied the respective motions.

¶26. Willard's and Sumner's claim that under traditional tort principles they should be entitled to

recover all of their damages which include attorney's fees is not the law in Mississippi. Repeatedly, the Court has followed the American rule that when there is no contractual provision or statutory authority providing for attorney's fees, they may not be awarded as damages unless punitive damages are proper as well. *Stokes v. Board of Directors of La Cav Imp. Co.,* 654 So. 2d 524, 529 (Miss. 1995)*; Century 21 Deep South Properties, Ltd.. v. Corson*, 612 So. 2d 359, 375 (Miss. 1992); *Central Bank of Mississippi v. Butler,* 517 So. 2d 507, 512 (Miss. 1987). The Court, though, has held that attorney's fees are recoverable as an element of damages in a few situations. *See Greenlee v. Mitchell*, 607 So. 2d 97, 109 (Miss. 1992); *Howard v. Clanton*, 481 So. 2d 272, 276 (Miss. 1986) (interpreting Miss. Code Ann. § 89-1-33 to provide attorney's fees where a purchaser under a warranty deed incurred expenses adjudicating title). *See also Wirtz v. Switzer*, 586 So. 2d 775, 782 (Miss. 1991)(error not to allow jury to consider attorney's fees against defendant accountant when his negligence required executrix to defend against a complaint by heirs).

¶27. Other than those cases in which the American rule is applicable, we have allowed attorney's fees only where the wrongful act of the defendant has involved the plaintiff in litigation with others. That is not the situation here. If we were to extend an award of attorney's fees as an element of damages, we would be moving toward the English rule of awarding counsel fees to successful plaintiffs in litigation. This rule we have repeatedly resisted. *See Grisham v. Hinton*, 490 So. 2d 1201, 1206 (Miss. 1986).

¶28. Willard and Sumner argue that the case of *Universal Life Ins. Co. v. Veasley*, 610 So. 2d 290 (Miss. 1992), overrules the limited situations for an award of attorney's fees. Veasley, the beneficiary of a life insurance policy, sued Universal Life for failure to pay the claim. The jury awarded Veasley the balance due on the contract after funeral expenses had been paid, $500 for actual extra-contractual damages and $175,000 in punitive damages. Universal appealed these awards, and the Court reversed and rendered as to the punitive damages issue. The Court upheld the extra-contractual damages based on emotional distress. The Court applied the tort law principle that one is liable for the full measure of the reasonably foreseeable consequences of her actions. Further stating that it was foreseeable by an insurer that failure to pay a valid claim through the negligence of its employees may cause an adverse result to the plaintiff. *Id.* at 295. The Court went on to say, "[a] dditional inconvenience and expense, attorney's fees and the like should be expected in an effort to have the oversight corrected." *Id.* This is the language relied on by Willard and Sumner. However, *Veasley* is addressing a problem peculiar to the insurance industry, specifically the lack of proper damages when there is a failure to pay on an insurance contract without an arguable reason, and the circumstances do not warrant punitive damages. Its application should be limited.

¶29. It was proper to deny attorney's fees in this instance, because there was no contractual provision or statutory authority nor was there an award of punitive damages. Moreover, there was no litigation between the plaintiffs and a third party. The trial judges did not abuse their discretion on this issue. However, on remand should the punitive damages issue be submitted to the jury and an award granted it follows that attorney's fees should be awarded as well.

¶30. Willard and Sumner also contend they are due attorney's fees because of Paracelsus' unsuccessful Motion To Compel Opposing Counsel's Withdrawal Due To Conflict Of Interest. Paracelsus apparently attempted to show that W. O. Luckett, a member of the former firm of Willard and Sumner's attorney, represented Paracelsus on a Worker's Compensation claim. The order of the

trial court summarily denied any attorney's fees without making any findings, and neither party designated the transcript of the hearing on appeal. In previous matters, the Court has stated that it will assume the trial judge made determinations of fact sufficient to support his verdict where no specific finding of fact is made. *Love v. Barnett*, 611 So. 2d 205, 207 (Miss. 1992); *Walters v. Patterson*, 531 So. 2d 581, 583 (Miss. 1988). Therefore, the Court must presume that the ruling of the trial courts as to this contention is correct and affirm the orders, as the record does not support a contrary view.

¶31. Willard and Sumner also claim they are entitled to attorney's fees because they were successful on their motions to compel discovery. Apparently, at the hearing on these motions, Willard and Sumner were successful but were denied their motions for attorney's fees. In the written order, the trial courts summarily denied Willard's and Sumner's motions for attorney's fees. We have held that the award of attorney's fees against the losing party is mandatory under Rule 37(a)(4), unless the trial court finds that the motion to compel was substantially justified, and the award was not unjust. *Barnes v. Confidential Party*, 628 So. 2d 283, 292 (Miss. 1993). The standard of review for a trial court's decision on this issue is the familiar abuse of discretion standard. *Id.* The Court will have to assume here that the trial judges made a sufficient determination of justification in their decision, because the transcripts of the hearings were not designated on appeal. Willard and Sumner are appealing the orders of the lower court and they have the burden of seeing that the record before the Court contains all data essential to matters relied upon for reversal. *Shelton v. Kindred*, 279 So. 2d 642, 644 (Miss. 1973). As a procedural matter, the better practice for trial courts under Rule 37(a)(4) would be to specifically state in the written order why such motions are substantially justified. However, we will assume in this situation that the trial judges made determinations of fact sufficient to support their verdicts here. *See Love*, 611 So. 2d at 207. Accordingly, we affirm the trial judges on this issue.

## Conclusion

¶32. This case is reversed and remanded for a new trial consistent with this opinion. Willard and Sumner are entitled to a retaliatory discharge instruction. Accordingly, the trial courts may wish to review their rulings on the submission of a punitive damages instruction to the jury.

**¶33. REVERSED AND REMANDED FOR A NEW TRIAL CONSISTENT WITH THIS OPINION.**

**PRATHER AND SULLIVAN, P.JJ., BANKS, McRAE, ROBERTS, AND SMITH, JJ., CONCUR. LEE, C.J., AND MILLS, J., NOT PARTICIPATING.**

1. Throughout this opinion, the Appellees are collectively referred to as "Paracelsus."